**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| JOHN GEML, individually and on behalf of all others similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) Civ. No. _____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| FIRST POTOMAC REALTY TRUST, ROBERT MILKOVICH, JAMES P. HOFFMAN, TERRY L. STEVENS, ROBERT H. ARNOLD, THOMAS E. ROBINSON, and KATI M. PENNEY, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(A) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff John Geml ("Plaintiff"), by his attorneys, alleges upon information and belief,

except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of himself and the public stockholders of First

Potomac Realty Trust ("First Potomac" or the "Company") against First Potomac's Board of

Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934

Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      On June 27, 2017, First Potomac and Government Properties Income Trust

("Government Properties") announced that they had entered into a definitive agreement ("Merger

Agreement") under which Government Properties will acquire all of the outstanding shares of First

Potomac in an all-cash transaction (the "Proposed Transaction").  If consummated, First Potomac

stockholders will receive $11.15 in cash for each share of First Potomac common stock.  The Proposed Transaction has an enterprise value of approximately $1.4 billion.

3.      On July 31, 2017, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Definitive Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.      Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.      The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

2

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of First Potomac common stock.

9.      First Potomac is a corporation organized and existing under the laws of the State of Maryland.  The Company maintains its principal executive offices at 7600 Wisconsin Avenue, 11th Floor, Bethesda, Maryland, 20814. First Potomac common stock trades on the New York Stock Exchange under the ticker symbol "FPO."

10.     Defendant Robert H. Arnold ("Arnold") has served as a trustee of First Potomac since 2003.

11.     Defendant James P. Hoffman ("Hoffman") has served as a trustee of First Potomac since 2015.

12.     Defendant Robert Milkovich ("Milkovich") has served as First Potomac's President Chief Executive Officer, and Trustee since November 2015.

13.     Defendant Kati M. Penney ("Penney") has served as a trustee of First Potomac since October 2016.

14.     Defendant Thomas E. Robinson ("Robinson") has served as a trustee of the Company since 2016.

15.     Defendant Terry L. Stevens ("Stevens") has served as a trustee of First Potomac since 2003.

16.     Defendants Arnold, Hoffman, Milkovich, Penney, Robinson, and Stevens are collectively referred to as Individual Defendants and/or the Board.

17.     Non-party Government Properties is a Maryland real estate investment trust. Government Properties is headquartered at Two Newton Place, 255 Washington Street, Suite 300, Newton Massachusetts, 02458.

3

18.     Non-party GOV NEW OPPTY REIT ("REIT Merger Sub") is a wholly-owned subsidiary of Government Properties and a Maryland real estate investment trust formed for the purpose of effectuating the Proposed Transaction.

19.     Non-party GOV NEW OPPTY LP ("Merger LP") is a Delaware Limited Partnership that is a wholly-owned subsidiary of Government Properties and subsidiary of REIT Merger Sub.

## CLASS ACTION ALLEGATIONS

20.     For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of First Potomac stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

21.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22.     The Class is so numerous that joinder of all members is impracticable.  As of August 1, 2017, First Potomac had 58,741,000 shares of common stock outstanding.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

a.     whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

b.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

24.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## **FURTHER SUBSTANTIVE ALLEGATIONS**

30.     On June 28, 2017, First Potomac issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> BETHESDA, Md. – (BUSINESS WIRE) – First Potomac Realty Trust (NYSE:FPO) today announced that it has entered into a definitive merger agreement with Government Properties Income Trust (NASDAQ:GOV) under

which GOV will acquire all of the outstanding shares of First Potomac. The transaction, which is valued at $1.4 billion, including the assumption of debt, is expected to close prior to year end 2017.

Under the terms of the agreement, First Potomac shareholders will receive $11.15 in cash per share at the close of the transaction. This represents a premium of approximately 9.3% to First Potomac's 30-trading day Volume Weighted Average Price ended April 24, 2017, the last trading day before media speculation regarding a potential sale of First Potomac.

"The Board of Trustees conducted a thoughtful and comprehensive review of strategic alternatives and we are pleased to reach this agreement with GOV to maximize value for shareholders," said Robert Milkovich, Chief Executive Officer of First Potomac Realty Trust. "Over the last 18 months we have worked diligently to refine the Company's portfolio, strengthen the balance sheet, and enhance First Potomac's corporate governance. This transaction and the attractive value that shareholders will receive demonstrates the successful execution of these efforts and is a testament to the dedication of First Potomac's employees."

**The Proxy Misleads First Potomac Stockholders by Omitting Material Information**

31.     On July 31, 2017, First Potomac filed the materially misleading and incomplete Proxy with the SEC. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a standalone entity as evidenced by the Company's financial projections, and the financial analysis underlying the fairness opinion provided by Wells Fargo Securities, LLC ("Wells Fargo").

*Material Omissions Concerning the Company's Financial Projections*

32.     First, the Proxy discloses several non-GAAP accounting metrics for the Company's projected financial information: Pro Rata Cash Net Operating Income ("NOI"), Adjusted EBITDA, Funds From Operation ("FFO"), Adjusted FFO, and Cash Available for Distribution. However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

33.     The Proxy fails to disclose the line items underlying Pro Rata Cash NOI necessary to reconcile it to GAAP measures, including (i) total revenues, (ii) operating expenses, (iii) real estate taxes, (iv) insurance expenses, (v) straight-line rents, (vi) amortization of lease incentives, (vii) rent abatements, (viii) deferred rents, and (ix) properties sold or classified as held-for-sale.

34.     The Proxy fails to disclose the line items underlying Adjusted EBITDA necessary to reconcile Adjusted EBITDA back to GAAP net income, including the cash and non-cash components of general and administrative expense.

35.     The Proxy fails to disclose the line items underlying FFO necessary to reconcile FFO, including (i) net income, (ii) gains/losses on sales of rental property, (iii) impairments of rental property, (iv) real estate-related depreciation and amortization, (v) adjustments for unconsolidated partnerships and joint ventures, and (vi) noncontrolling interests in the income from the Company LP.

36.     The Proxy fails to disclose the line items underlying Adjusted FFO necessary to reconcile its most comparable GAAP financial measure, including (i) equity based compensation expense, (ii) non-cash amortization of deferred financing costs, (iii) non-real estate depreciation, (iv) cash paid for any non-first generation tenant improvements, leasing commissions and recurring capital expenditures, (v) straight-line rents, (vi) associated uncollectible amounts, (vii) amortization of rent abatements and lease incentives, (viii) deferred market rent, (ix) debt fair value amortization, (x) impact of accelerating tenant improvement reimbursement revenue recognized for the Company's NOVA build-to-suit property, (xi) tenant improvements, leasing commissions and capital expenditures related to first generation costs, and (xii) expenditures related to development and redevelopment.

37.    The Proxy fails to reconcile Cash Available for Distribution to its most directly comparable GAAP financial measure, or provide the values of the line items used in its calculation, including: (i) first generation tenant improvements, leasing commissions and recurring capital expenditures, (ii) expenditures related to development and redevelopment, (iii) free rent provided to tenants as part of a lease agreement, and (iv) debt principal amortization.

38.    The Proxy must disclose the necessary line items to reconcile these five non-GAAP measures to well-understood GAAP financial metrics. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

39.    The Proxy also fails to disclose and otherwise reconcile the unlevered free cash flows (discussed below) First Potomac is forecasted to generate, as well as GAAP reconciliation of the unlevered free cash flows. Such projections were specifically based on "financial forecasts and estimates of the Company's management," and were relied upon by Wells Fargo in connection with their *Discounted Cash Flow Analysis*. First Potomac shareholders would necessarily find such cash flow projections material in assessing the fairness of the Merger Consideration

40.    Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

41.    On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available

without unreasonable efforts.  S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.  The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

42.    The Company routinely reconciles its non-GAAP metrics to GAAP, including for FFO, in its quarterly and yearly financial reports. For example, in the Form 10-Q filed by the Company on July 28, 2017, the Company provided the chart below, reconciling FFO to the GAAP measure of net income:

| | | | | |
|---|---|---|---|---|
| Net (loss) income attributable to common shareholders | $    (2,705) | $    (5,491) | $    40,439 | $    (9,597) |
| Add: Depreciation and amortization: | | | | |
| Rental property | 13,845 | 15,141 | 28,411 | 30,147 |
| Unconsolidated joint ventures | 700 | 895 | 1,571 | 1,776 |
| Impairment of rental property | — | 2,772 | — | 2,772 |
| (Gain) loss on sale of rental property | — | — | (42,799 | 1,155 |
| Gain on sale of rental property owned through [1] | — | — | (3,797 | — |
| Net (loss) income attributable to noncontrolling interests in the Operating Partnership | (123) | (294) | 1,762 | (427) |
| FFO available to common shareholders and unitholders | 11,717 | 13,023 | 25,587 | 25,826 |
| Dividends on preferred shares | — | 794 | — | 3,042 |
| Issuance costs of redeemed preferred shares [2] | — | 3,095 | — | 4,999 |
| FFO | $    11,717 | $    16,912 | $    25,587 | 33,867 |
| Weighted average common shares and Operating Partnership units outstanding – basic | 60,234 | 60,155 | 60,207 | 60,151 |
| Weighted average common shares and Operating Partnership units outstanding – diluted | 60,544 | 60,230 | 60,486 | 60,232 |

43.    Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads First Potomac stockholders

44.    These projections were provided to Wells Fargo, and used by Wells Fargo, for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction.    Because these analyses were presented to the First Potomac stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial

projections materially misleads those same stockholders as to the accuracy and value of the analyses.

### *Material Omissions Concerning Wells Fargo's Financial Analyses*

45.     The Proxy describes Wells Fargo's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Wells Fargo's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, First Potomac public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Wells Fargo's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to First Potomac's stockholders.

46.     With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the implied present values of unlevered free cash flows. As a result of this omitted information, the *Discounted Cash Flow Analysis* of First Potomac is materially misleading because shareholders are unable to determine whether the adjustments made by Wells Fargo were in fact reasonable.

47.     With respect to Wells Fargo's *Selected Public Companies Analysis* for First Potomac, the Proxy fails to disclose the individual multiples for each of the selected public companies analyzed by Wells Fargo, as well as the financial performance metrics for each selected company. Without such information, First Potomac's stockholders are unable to determine how the multiples used in determining First Potomac's value compare to the other companies. The Proxy fails to even disclose the median or mean values for these figures, disclosing only the low and high of each measure. As a result, stockholders are unable to assess whether Wells Fargo

utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

48.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and First Potomac**

63.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.    The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  First Potomac is liable as the issuer of these statements.

65.    The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66.    The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67.    The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

11

68.    The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70.    Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

71.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.    The Individual Defendants acted as controlling persons of First Potomac within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of First Potomac and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

76.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.    Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 9, 2017          LEVI & KORSINSKY LLP

/s/ Donald J. Enright
Donald J. Enright (#MD013551)
Brian D. Stewart (#19906)
1101 30th Street NW
Suite 115
Washington, D.C. 20007
Telephone:     (202) 524-4290
Facsimile:     (202) 333-2121

*Counsel for Plaintiff*

14